**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JOHN STRONG,

      Plaintiff,

v.

No. _____

SCOUT SECURITY, INC., DANIEL ROBERTS, DAVE SHAPIRO, ANTHONY BROWN, and SOL MAJTELES,

      Defendants.

**COMPLAINT**

COMES NOW, Plaintiff John Strong, by and through his attorneys, ADAMS+CROW LAW FIRM (Arlyn G. Crow and Jacqueline K. Kafka), and brings this Complaint against Scout Security, Inc. ("Scout Security"), Dan Roberts, Dave Shapiro, Anthony Brown, and Sol Majteles as follows:

**INTRODUCTION**

1. Scout Security began as a small start-up in 2013 in the "DIY" home security sector. Mr. John Strong, having met the founders and reviewed the product offering, decided to invest in their vision. Mr. Strong purchased shares in Scout Security and urged other investors to do the same. Because of his strong business and leadership skills, Mr. Strong was named the board chairman of Scout and was involved in the company's initial public offering ("IPO") on the Australian Stock Exchange. Notwithstanding that fact, the other board members misrepresented information to him related to his stock value, his ability to sell his stock, and his position, all at the time that he was severely ill, to force him to sell his stock at a reduced price and to abandon his Board position. These actions caused Mr. Strong reputational and monetary damages. Mr. Strong

now seeks an action against Scout Security and its board for the losses he incurred as a result of their actions.

2. Plaintiff is a resident of Bernalillo County, New Mexico.

## JURISDICTION AND VENUE

3. Scout Security is a Delaware corporation with its principal place of business in Chicago, Illinois.

4. Daniel Roberts is a founder of Scout Security and a resident of Chicago, Illinois.

5. Dave Shapiro is a founder of Scout Security and a resident of Chicago, Illinois.

6. Anthony Brown is a board member of Scout Security and resident of Australia.

7. Sol Majteles is a board member of Scout Security and resident of Australia.

8. Mr. Strong seeks damages in an amount greater than $75,000.00.

9. This Court has jurisdiction over all claims asserted by Plaintiff, pursuant to 28 U.S.C. § 1332(a) (2011).

10. Venue of this Court is proper pursuant to 28 U.S.C. § 1391 (2011).

## GENERAL ALLEGATIONS

11. Plaintiff incorporates the foregoing paragraphs by reference.

12. In or about 2013, Scout Security was formed by Dan Roberts and Dave Shapiro ("Founders") to offer home security products in the DIY home security sector. John Strong was made aware of the company through a fundraising call through Kickstarter® and decided to meet with the Founders to determine whether Scout Security would be a good investment opportunity.

13. Mr. Strong made his first investment (angel investment) in Scout Security around 2014-15 and made a subsequent seed investment. At the time of Scout Security's IPO, Mr. Strong owned approximately 6-9% of the stock in Scout Security through convertible notes. At the time of the IPO, there were only three other investors with greater interests in Scout Security.

14. Mr. Strong became very involved in Scout Security early in its development. Mr. Strong advised Scout Security on numerous business matters and maintained very close contact with the Founders up to—and through—the initial public offering.

15. Thereafter, Armada Holdings ("Armanda"), an investment brokerage company, approached Scout Security about going public on the Australian Stock Exchange.

16. Pursuant to agreement between Armada and Scout Security, Armada agreed to underwrite the IPO.

17. Armada also managed the conversion of the Scout Security convertible notes into publicly traded stocks. The notes were converted, an account opened at Hartleys®, and the Scout Security publicly traded shares were issued through Hartleys on behalf of Mr. Strong by Armada. Mr. Strong did not manage any conversion of the shares or any aspect of the IPO. Armada Holdings managed the entire IPO and Mr. Strong never directly sought stock or traded on the Australian Stock Exchange.

18. August 25, 2017 was the first day of trading for Scout Security, Inc.

19. At the time of the IPO, Mr. Strong's Scout Security stock was worth $1-$1.4 million.

20. Thereafter, Mr. John Strong was named the Board Chairman for Scout Security because the value he added to the company, to include his substantial investment, his influence with investors, and his commitment to Scout Security. In that role, and through Mr. Strong's continued leadership, Scout Security continued to experience investment growth, advancement in its product and product offerings, and continued positive outlook.

21. Mr. Strong maintained his position as chairman of the Scout Security, Inc. board ("Board"). Also appointed to the public-held company were Defendants Roberts, Shapiro, Brown

and Majteles.  Defendants Brown and Majteles had no relationship with Scout Security prior to the IPO and were the selections of Armada Holdings.

22. Shortly after the IPO, Armada Holdings sought to enter into a finance agreement with Scout Security, but Mr. Strong convinced the Founders that the finance terms were not favorable to Scout Security and that the Board should look elsewhere for better finance terms. Armada Holdings then asked its shareholders to vote Mr. Strong off the Board.  Because of his strong and invaluable position in the company, Mr. Strong was retained as chairman of Scout Security.

23. In or about January of 2018, Plaintiff fell gravely ill.

24. Due to his health, Mr. Strong discussed the possibility with board members of selling some of his stock to cover medical and related expenses.  Defendant Brown and Defendant Majteles misrepresented to Mr. Strong that he could not sell his stock while he was a member of the Board.

25. At the time of his illness, Mr. Strong's stock was 25% "unrestricted stock" and 75% "restricted stock," meaning Mr. Strong could sell the unrestricted stock at any time but could not sell the restricted stock.  Mr. Strong wanted to sell his unrestricted stock, not his restricted stock, and intended to maintain his interest in those stock—and Scout Security—indefinitely.

26. As his condition worsened, Mr. Strong maintained a continuous discussion with the Board about his desire to sell his unrestricted stock because of his medical condition and costs and expenses related thereto. Defendants continuously misrepresented to Mr. Strong that he could only sell his Scout Security stock if he resigned from the Board.

27. Mr. Strong placed an order to sell his unrestricted stock but was asked by Hartleys and the corporate secretary whether he had "permission" to sell the shares, even though the stock was unrestricted.

28. The other Board members knew of Mr. Strong's medical and financial situation and knew the misrepresentations made by Defendants Majteles and Brown. The other Board members were complicit or ratified the misrepresentations made by Defendants Majteles and Brown.

29. Upon information and belief, Defendants' misrepresentations were intended to force Mr. Strong to resign from the Board and sell his Scout Security stock at a reduced value while he was under financial duress.

30. In or about January of 2019, Mr. Strong was forced to sell his Scout Security stock at a loss and resign from the Board.

31. As a result, Mr. Strong suffered financial losses, to include loss in stock value and compensation as a Board member.

32. Plaintiff also suffered reputational damages and injuries when he was forced to resign from the Board.

## COUNT I
## BREACH OF FIDUCIARY DUTY

33. Plaintiff incorporates the foregoing paragraphs by reference.

34. Defendants, as members of the Board, owe Plaintiff, as a Scout Security shareholder, fiduciary duties.

35. Defendants intentionally and maliciously breached their duty to Plaintiff.

36. As a direct and proximate cause of Defendants' breach, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT II
## MISREPRESENTATION

37. Plaintiff incorporates the foregoing paragraphs by reference.

38. Defendants made misrepresentations to Plaintiff, including, without limitation, misrepresentations about Plaintiff's need to resign before he could sell Scout Security stock.

39. At the time of making the representations, Defendants knew the representations were false or made the representations with a reckless disregard for their veracity.

40. Defendants made the misrepresentations with the intent to deceive Plaintiff.

41. Defendants made the misrepresents with the intent to induce Plaintiff's reliance on the misrepresentations.

42. Plaintiff relied on the misrepresentations to his detriment.

43. As a direct and proximate result of Defendants' misrepresentations, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT III
## SECURITIES EXCHANGE ACT VIOLATIONS

44. Plaintiff incorporates the foregoing paragraphs by reference.

45. Defendants made material misrepresentations to Strong regarding his ability to sell shares.

46. The Defendants aided and abetted each other in the misrepresentations made to Mr. Strong.

47. The Defendants' misrepresentations caused Mr. Strong to suffer a loss in the value of Scout Security shares.

48. All of the misrepresentations related to the sale of the shares of Scout Security occurred in the United States.

49. As a direct and proximate result of the Securities Exchange Act Violations, Mr. Strong suffered damages and is entitled to statutory damages and relief under the Act.

## COUNT IV
## NEGLIGENCE

50. Plaintiff incorporates the foregoing paragraphs by reference.

51. Defendants owed a duty of care not to misrepresent Mr. Strong related to his stock shares and purported obligation to resign prior to selling the same.

52. Defendants breached that duty by making misrepresentations to Mr. Strong, including, without limitation, misrepresentations about Plaintiff's need to resign before he could sell Scout Security stock.

53. As a direct and proximate result of Defendants' misrepresentations, Plaintiff has been damaged in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants for:

A. Compensatory damages, punitive damages, other legal damages to be determined at trial, and pre- and post-judgment interest;

B. Statutory damages under the Securities Exchange Act;

C. Attorneys' fees and costs; and

D. Such other relief as the Court deems just and proper.

Respectfully submitted:

ADAMS+CROW, P.C.

By: */s/Jacqueline K. Kafka*
Arlyn G. Crow
Jacqueline K. Kafka
5051 Journal Center Blvd. NE, Suite 320
Albuquerque, NM  87109
Phone: 505-582-2819
Arlyn@adamscrow.com
Jackie@adamscrow.com
*Attorneys for Plaintiff*